McBRTDE, Judge.
Matthew Otis, claiming to be totally and permanently disabled, seeks to recover of defendant workmen’s compensation for 400 weeks at the maximum rate, less such amounts as have already been paid to him. The disability claimed by the workman is attributed by him to a left inguinal hernia, sustained on July 24, 1951 while working as a laborer for defendant at the local public grain elevator.
The defendant admitted that the plaintiff had sustained a compensable injury, hut alleged that the injury consisted not of a left inguinal hernia, but of a recurrence of a right inguinal hernia that had been repaired at Charity Hospital some fifteen months before the accident of July 24, 1951. Defendant further alleged that it had caused the recurrent right inguinal hernia to be repaired, defrayed all costs and expenses of the operation, and paid the defendant the full compensation due him up to October 22, 1951, the day on which he was discharged by the surgeon as able to return to his job.
The defendant specially pleaded that the plaintiff never did have a left inguinal hernia, but merely has an enlarged congenital left inguinal ring which is in the same condition as it was prior to the accident and even before plaintiff was employed by the defendant.
*867 On the trial below, after hearing the testimony of the plaintiff and his two medical experts, as well as the three physicians called as defense witnesses, the trial judge stated that the plaintiff’s testimony “is uncorroborated and is contradicted” and that “the evidence preponderates against the plaintiff.” The trial judge further stated to plaintiff’s counsel:
“ * * * I don’t want to be in the position of not giving you an opportunity to produce lay testimony and also to analyze the authorities.
“If you tell me you want an opportunity to review the authorities and see whether or not you can get lay evidence. to bolster up your client’s case, I will give you an opportunity'.”
The trial was then adjourned for about three weeks, and upon its resumption plaintiff placed four lay witnesses on the stand. After taking the matter under advisement, the judge rendered judgment for. the defendant dismissing plaintiff’s suit, and handed down written reasons which are in the record. Plaintiff takes this appeal from the judgment.
Plaintiff was first employed as a laborer at the public grain elevator on November 13, 19S0. In accordance with the defendant’s practice, there was a pre-employment physical examination made by Dr. Samuel Karlin, whose'finding was that plaintiff had had a successful operation some seven months previously for a right inguinal hernia which had been of eighteen months’ standing, and that he also had an enlarged congenital inguinal ring on the left side. Dr. Karlin made a second examination of plaintiff a few days later, and testified that this second examination confirmed his original findings.
On July 24, 1951 Otis reported to his foreman that while opening the doors of a boxcar he experienced pain in his right groin. He was immediately referred to Dr. Karlin, who found that Otis was suffering from a recurrence of the right inguinal hernia. At the same time Dr. Karlin examined plaintiff on the left side and again noticed the enlarged left inguinal ring still existing, and his opinion was that there had been n.o change in the left inguinal ring since his last pre-employment examination.
Dr. Karlin had the plaintiff confined in the FlintjGoodridge Hospital the next day, and on July 27, 1951 performed an operation on Otis to repair the recurrent right inguinal hernia. Dr. Karlin believed that the operation was entirely successful, and on October 22, 1951 he discharged plaintiff as being fit to return to his occupational duties. The defendant paid workmen’s compensation to plaintiff up to the date of his discharge by Dr. Karlin.
Between the date of the operation and his discharge, Dr. Karlin saw the plaintiff on five occasions; examinations were made to determine the progress of Otis’ recovery frcffin the operation, and Dr. Karlin states that on each of the occasions he examined the plaintiff also on his left side noting that the condition of the left inguinal ring had not changed in any manner.
On October 26, 1951 the. attorney representing Otis notified the defendant that Otis had a hernia on the left side, was disabled, and was entitled to compensation. On October 30, 1951 Otis was requested by the defendant to submit to another examination and was seen by Dr. Warren L. Rosen for that purpose. Dr. Rosen made his examination on November 2, 1951, and his opinion was that there was no evidence of a hernia on the left side. He found only an enlarged left inguinal ring of long standing.
Again on November 28, 1951 plaintiff was examined by Dr. Karlin who observed that the recurrent right inguinal hernia, which he had repaired on July 27, 1951, was completely healed, and that there was no evidence of any hernia on the left side. He states that he again noticed that the left inguinal ring was the same as he had found upon his pre-employment and subsequent examinations of Otis.
The defendant also caused plaintiff to be examined by a third surgeon, Dr. James D. Rives. This examination was made November 28, 1951, and Dr.-Rives confirms in all respects the findings and opinions of both Dr. Karlin -and Dr. Rosen.
From the date of the alleged accident, during the period of convalescence follow *868 ing the accident, and while undergoing the several physical examinations prior to and ■up to his final discharge on October 22, 1951, according to Dr. Karlin the plaintiff made no complaint of any pain whatsoever in the left groin.
The only questions presented by this appeal are: first, whether the plaintiff has a left inguinal, hernia as he alleges, or merely an enlarged congenital left inguinal ring, and second, if a left inguinal hernia does exist, whether it is the result of any injury arising out of Otis’ employment by defendant.
As has already been stated, three medical experts testified for defendant that the plaintiff had and now has a large external left inguinal ring. Dr. Rives believes that this condition is congenital and not due to traumatism. Dr. Rosen believes that the plaintiff falls into that class of persons born with large rings. Dr. Karlin’s opinion was that the condition is the same as he had found in the two pre-employment examinations. Dr. Karlin also stated that he noted from the records of the Charity Hospital where the plaintiff had been operated on for the right' inguinal hernia some seven or eight months prior to his employment, that the plaintiff at that time had the enlarged ring on the left side. The defense experts also testified that the incidence of the development of hernia following an enlarged inguinal ring is no greater than the incidence of the development of a hernia in normal individuals without the large ring.
Dr. John L. DiLeo, produced as a witness by plaintiff,, stated that he had examined Otis on October 23, 1951 and that he found what he interpreted to be a small indirect inguinal hernia about the size of a pecan on plaintiff’s left side, and that the inguinal ring was dilated. Dr. Dominic Condie, the plaintiff’s other medical expert, testified that he first saw Otis on November 12, 1951 and physically examined him, and that on plaintiff’s left side there was a relaxed inguinal ring, plus a small hernia which he could feel extending almost to the external ring. Dr. Condie’s impression was that the plaintiff had an indirect inguinal hernia on the left side.
It might be stated here that during the course of the trial, on February 25, 1952, the court had Dr. Rives and Dr. Condie to examine plaintiff in chambers, but the physicians expressed divergent opinions as to their findings. Dr. Condie’s findings were essentially the same as those he had previously testified to, and he expressed the opinion that plaintiff had an incomplete inguinal hernia on the left side. Dr. Rives stated that his examination of plaintiff in the judge’s chambers revealed that the plaintiff did not have a hernia on the left side, but that he does have a weakness of the floor of the inguinal canal, which does not constitute a hernia.
Plaintiff’s counsel calls attention to the answers of the three defense medical experts to questions on cross-examination to the effect that in examining a patient it is possible for a physician to fail to discover the existence of an indirect inguinal hernia. The three physicians stated that there is always such a possibility which might result from human fallibility. However, all three are positive that they had not erred in making their diagnoses of plaintiff’s condition.
The trial judge believed that the medical testimony preponderated in favor of defendant’s contentions, and our careful study of the testimony of the physicians convinces us that the judge was correct in his conclusion. Our thought is in view of the fact that Dr. Karlin had made two pre-employment examinations of Otis, examined him upon the happening of the accident, operated upon him in the Flint-Good-ridge Hospital, and saw him several times during his convalescence from the operation, that he was in a position superior to the other physicians to state the extent of Otis’ complaints. Courts often rely upon the testimony of the attending physician over that of other experts who merely examined the patient. Trascher v. Eagle Indemnity Company of New York, La.App., 48 So.2d 695; Vienne v. Chalona, La.App., 28 So.2d 154.
After having heard the medical testimony, and although believing that the testimony of the defendant’s physicians preponderated that of the doctors produced by the plaintiff, the judge, in a spirit of fair *869 play, continued the case in order to allow plaintiff to produce lay witnesses because, as he stated from the bench, he wanted to allow plaintiff every opportunity to make out a case.
Where medical experts express conflicting opinions regarding the capability of a plaintiff to return to the duties of his occupation, courts are sometimes guided by the testimony given by lay witnesses, and such testimony is to be given consideration along with all facts and circumstances disclosed by the record.
Plaintiff produced his wife and three friends as witnesses to testify as to his present inability to return to his employment, but we attach little importance to their testimony, which, to say the least, is unimpressive, and rather than supporting, it weakens plaintiff’s cause.
Otis’ wife testified in effect that her husband is disabled, suffers pain in his left groin, is unable to work, cannot help her with chores around the house, and that it is even necessary for her to tie his shoelaces as he cannot bend over. Dr. Karlin denied that Otis ever complained to him of pain in the left side, but Otis’ wife states that she was present when her husband made complaint not only to Dr. Karlin, but also to Dr. Rosen, of pain in the left side. But even if we accept her testimony on that point over the testimony of Dr. Karlin, such complaints, if they were ever made, were only made after the plaintiff had consulted his attorney and had made demand upon the defendant for further compensation. Otis’ wife only accompanied him once to Dr. Karlin’s office, and this visit occurred after plaintiff had placed his claim in the hands of his attorney and the demand letter had been dispatched to defendant. Dr. Rosen never saw the plaintiff until after the demand was made.
Rufus Robinson testified that plaintiff complains of pain in his left side, and that his gait is different from what it was before the operation. This witness did not describe the manner in which Otis now walks.
Frances Brister, another of the. lay witnesses, says that plaintiff walks with his left shoulder a little above the right and complains sometimes about his left side. This witness seems versed in compensation matters, and we make this comment for the reason that in answer to a question she stated that the Charity Hospital does not take compensation cases.
The testimony of Houston Jackson is so confusing that no credence whatever can be given to it. He could not state positively whether Otis has pain in the right or the left side. He claims that he visited Otis in the hospital in July 1951 and is sure it was at the Charity Hospital on Tulane Avenue he saw him. He says that the operation was performed on plaintiff’s left side. Jackson did not know that plaintiff had ever been in the Flint-Goodridge Hospital. It is conceded that the operation in July 1951 was performed at the Flint-Goodridge Hospital, and Jackson’s testimony that it was at the Charity Hospital he saw Otis completely destroys any vestige of his credibility.
A reversal of the judgment appealed from and a finding for plaintiff could result only from our disregarding entirely the testimony of the three defense experts, whose testimony the judge a qua believed preponderated against the plaintiff’s contentions. We are unwilling to say that the testimony of the plaintiff’s physicians is entitled to more weight. •
Of course, if we were confronted with a situation where the congenital, condition, which has always existed in his left groin, had been aggravated as a result of his employment with defendant, plaintiff would be entitled to compensation for such disability as arose therefrom. We are satisfied that there has been no change whatever as regards plaintiff’s left groin, for we have the positive testimony of Dr. Karlin to that effect, and Dr. Karlin, after all, is in a better position to know because of having examined Otis before the accident.
We believe that if plaintiff has a hernia on the left side that Dr. Karlin would have discovered that fact and corrected it at the same time he operated upon Otis’ right side.
Accordingly, the judgment appealed from is affirmed.
Affirmed.